**WO**

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Julie Henderson, | No. CV-20-01767-PHX-DJH |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

Before the Court is Plaintiff's Complaint (Doc. 1) seeking judicial review of the Commissioner's denial of her application for Social Security Disability Insurance Benefits. The Commissioner has filed an Answer (Doc. 19) and both parties have submitted briefs in support of their respective position. (Docs. 21, 22 and 23). The Court has reviewed the briefs and Administrative Record, and now affirms the Administrative Law Judge's ("ALJ") decision. (R.[1] at 2317).[2]

**I.     Background**

Plaintiff alleges a disability onset date of January 25, 2012. After the Appeals Council remanded an earlier denial of her disability claim, an ALJ reviewed the administrative record, and conducted a hearing on December 6, 2016. The ALJ determined that Plaintiff had not been under a disability from June 25, 2012, through the date of his March 10, 2017, decision. The Appeals Council affirmed the decision and Plaintiff

---

[1] "R" refers to the Administrative Record followed by page number.

[2] The assigned ALJ was Randolph E. Schum.

1   appealed the decision to the district court.  *Henderson v. Commissioner of Soc. Sec. Admin.*,

2   2:17-cv-04488- DWL.

3           The district court found that the ALJ's decision was based on reversible legal error

4   and remanded for further proceedings.  *Id.*  Specifically, the district court stated "the ALJ

5   committed reversible legal error when discounting [Plaintiff's] pain and symptom

6   testimony.  The Court will remand for further proceedings as opposed to remanding for an

7   award of benefits, because further proceedings would serve a useful purpose and the record

8   creates serious doubts as to whether [Plaintiff] is, in fact, disabled." (*Id*. at 4).  Accordingly,

9   the matter was remanded and reopened.  Plaintiff subsequently filed a claim for Title II

10  disability benefits on August 31, 2018, and the ALJ consolidated her claims.[3]  (R. at 2317).

11          On remand, the ALJ conducted a telephonic hearing on March 24, 2020, in which

12  Plaintiff and a vocational expert ("VE") testified.  Plaintiff testified that she received knee

13  injections from Dr. Musci, explaining that the injections were her only option for pain

14  because she is not a candidate for surgery.  (R. at 2349).  She stated that she did not use a

15  wheelchair for these appointments because it did not fit in the transporting vehicle.  (*Id*.)

16  She testified having a prescription for a wheelchair and a shower chair and that she

17  previously had used a walker.  (R. at 2350).  She stated that she is not able to put weight

18  on her legs, that she could no longer use compression socks on her left leg, and that she

19  spends most of the day "in bed with [her feet] up."  (*Id.*)  She stated using medical

20  marijuana but stopped in 2017 because she went on oxygen.  (R. at 2352).  She also testified

21  to using methamphetamine about 15 years ago when her opioid and muscle relaxer

22  prescriptions for cancer stopped.  (R. at 2358).  She stated having migraine treatments but

23  was unclear about the type or medication, only that her medication interferes with her

24  ability to drive and her other treatments.  (R. at 2352).  She testified that she needs knee

25  and back surgery but that she is unable to "be put under for more than four hours."  (R. at

26  2353).  She also stated that she has had 13 "TIA strokes." (R. at 2356).

27          Regarding her work history, Plaintiff testified that she used to work at Walmart, in

28

---

[3] A new ALJ, Paul Isherwood, was assigned to the matter.

1   the fitting room and as a cashier, and at a grocery store deli.  She left Walmart because she

2   was hit by a car in 2009 and she could no longer stand and bend.  (R. at 2353).  She also

3   stated that she has an associate's degree.  (R. at 2355).  She stated she is unable to work

4   because she is not "able to stand for long periods of time and having to lay down or having

5   to bend over to pick something up.  I can't squat, I can't go down on my knees."  (R. at

6   2358).  Regarding her daily activities, she stated that her average day consists of lying in

7   bed, and reading and watching TV if she does not have an appointment.  (R. at 2354).  She

8   stated "I can walk around the house, like, maybe to the bathroom and coming back.  But

9   any long-term walking, I can't do it."  (*Id*.)  She testified that she does not do chores and

10  that her roommate cooks and cleans.  (*Id*.)

11          The VE testified that there were jobs in the national economy which Plaintiff could

12  perform even with limitations of light work and additional restrictions and mental

13  limitations that she is "able to perform simple routine tasks . . . make simple work-related

14  decisions and occasionally interact with supervisors, co-workers and the public."  (R. at

15  2358–61).  The VE also testified that there were jobs available, albeit in reduced numbers.

16  (*Id*.)  The ALJ concluded that Plaintiff could perform "occupations such as assembler . . .

17  electronics worker . . . and inspector."  (R. at 2328).

18          The ALJ found that the Plaintiff had the following severe impairments: obesity;

19  mild degenerative joint disease of the lumbar spine, right ankle, left hip and both knees;

20  deep vein thrombosis and pulmonary embolism; degenerative disc disease of the cervical

21  spine; asthma/mild chronic obstructive pulmonary disease; and pain disorder.  (R. at 2320).

22  The ALJ concluded that these impairments significantly limited here ability to perform

23  basic work activities as required by SSR 85-28.  The ALJ further found that her mental

24  impairments of depressive disorder, anxiety disorder and post-traumatic stress disorder

25  considered singly and in combination do not cause more than minimal limitations in her

26  ability to perform basic mental work activities.  (*Id*.)  Thus, the ALJ concluded that Plaintiff

27  has not been under a disability from June 25, 2012, through the decisional date of August

28  10, 2020.  (*Id*. at 2328–29).

**II.     Legal Standard**

An ALJ's factual findings "shall be conclusive if supported by substantial evidence." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1153 (2019). The Commissioner's disability determination may be set aside only if it is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* Generally, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted). Whether the Commissioner's decision is supported by substantial evidence "is a highly deferential standard of review." *Valentine v. Comm'r of Soc. Sec.*, 574 F.3d 685, 690 (9th Cir. 2009). In determining whether to reverse an ALJ's decision, the district court reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001).

To determine whether a claimant is disabled, the ALJ follows a five-step process.[4] The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). The ALJ first determines whether the claimant is presently engaging in substantial gainful activity. Next, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. If so, the claimant is automatically found to be disabled. *Id.* At step four, the ALJ assesses the claimant's RFC and determines whether the claimant is still capable of performing past relevant work. If not, the ALJ proceeds to the fifth and final step to determine whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience. If not, the claimant is disabled. *Id.*

---

[4] *See* 20 C.F.R. § 404.1520(a)(4)(i)-(v).

### III.   Analysis

Plaintiff raises two issues on appeal: 1) the ALJ erred in analyzing her credibility about her pain, and 2) the ALJ erred in rejecting the opinions of Drs. Gordon and Potter.   (Doc. 21 at 1).  The Court will discuss these issues in turn.

#### A. The ALJ provided specific, clear, and convincing reasons supported by substantial evidence for rejecting Plaintiff's symptom testimony.

Plaintiff argues that the ALJ did not give legitimate and convincing reasons supported by substantial evidence for discounting her subjective symptom testimony. (Doc. 21 at 12–15).   The Commissioner responds that the ALJ properly examined the medical evidence to find that the record did not support Plaintiff's testimony as to the severity of her symptoms.  (Doc. 25).  The Court agrees.

An ALJ must evaluate whether the claimant has presented objective medical evidence of an impairment "which could reasonably be expected to produce the pain or symptoms alleged."   *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035–36 (9th Cir. 2007) (citations omitted).   Plaintiff concedes that the ALJ made this finding and does not otherwise contest it.  (*Id*. at 13).    However, she takes issue with the ALJ's findings that the limiting effects of those symptoms were not consistent with the medical evidence, including her own statements and testimony regarding activities of daily living.  (*Id.* at 25–26).

An ALJ may "reject the claimant's testimony about the severity of [the] symptoms" provided that the ALJ also explains his decision "by providing specific, clear, and convincing reasons for doing so." *Brown-Hunter v. Colvin*, 806 F.3d 487, 488–89 (9th Cir. 2015).   The ALJ may also consider "'whether the claimant engages in daily activities inconsistent with the alleged symptoms.'"   *Id.* (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1040 (9th Cir. 2007)).   "Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment," *Id.* at 1113, or where they suggest that "later claims about the severity of [the] limitations were exaggerated."

- 5 -

1    *Valentine v. Astrue*, 574 F.3d 685, 694 (9th Cir. 2009).

2    **1.   The ALJ's credibility determination**

3    In making his credibility determination, the ALJ found that Plaintiff's statements

4    about the intensity, persistence, and limiting effects of her symptoms were not entirely

5    consistent with the medical evidence and other evidence in the record. (R. at 2324).   The

6    Commissioner responds that the ALJ identified records that show unremarkable

7    neurological and musculoskeletal findings, such as normal strength and tone of all

8    extremities, which belie Plaintiff's alleged inability to stand and walk for extended periods.

9    (Doc. 22 at 6).   The Commissioner also asserts that the ALJ compared Plaintiff's pain and

10    symptom testimony to other evidence, including her inconsistent course of treatment, and

11    thus, the ALJ did not arbitrarily discredit her subjective testimony.

12    Plaintiff argues that the ALJ's finding that the record does not support her need for

13    a wheelchair to ambulate is not supported with any medical record. (Doc. 21 at 13).   The

14    Court notes that the ALJ found that the Plaintiff used a wheelchair due to a car accident,

15    but that the records were unclear when that occurred.   Plaintiff testified that she was hit by

16    a car and injured in 2009.   (R. at 2323).[5]   The record also refers to an accident, on an

17    unknown date, while Plaintiff was in a scooter resulting in a "dramatic hematoma" from

18    which she fully recovered. (R. at 2324).   The ALJ correctly observed that Plaintiff

19    continued working after these accidents up to the time she was terminated in June 2012.

20    (R. at 685).

21    Though some medical records reflect that Plaintiff used a wheelchair, the ALJ could

22    not find medical records to support that Plaintiff required one.   The records do include a

23    prescription pad-note for a "wheelchair and shower chair" dated October 24, 2014, but

24    without an accompanying examination record.   The physician's name on the note is Frank

25    Moussa, MD, Plaintiff's Orthopedic physician.    In 2014, Plaintiff appeared in Dr.

26    Moussa's office several times with a chief complaint of knee pain but without using any

27

28    ———————
[5] Reference was also made about a 2006 accident where Plaintiff, a pedestrian, was hit by a vehicle traveling at 25 miles per hour resulting in a lower sternum injury. (R. at 132, 683, 691).

1    assistive devices.  (R. at 953–72).  She also routinely presented in these visits with a normal
2    gait. (R. at 1013–24).  She received steroid injections on a couple of her visits, which were
3    effective. The ALJ also noted that in 2017, Plaintiff appeared for an examination that
4    showed mostly normal findings and noted that she was off of the wheelchair and using a
5    walker.  (R. at 2324 *citing* Ex. 50F).  The inconsistent record findings, as further discussed
6    below, and Plaintiff's own testimony of her ability to attend appointments without a
7    wheelchair, support the ALJ's finding that her limited daily activities cannot be objectively
8    verified with any reasonable degree of certainty.  (R. at 28).

9        Furthermore, Plaintiff testified that she received knee injections from Dr. Musci as
10   they were her only option for pain because she is not a candidate for surgery.  (R. at 2349).
11   In her December 2016 testimony, Plaintiff testified that Dr. Musi denied her knee
12   replacement surgery and believed that she was not a candidate for any surgery.  (R. at 53).
13   Notably, the prior reviewing district court observed that Dr. Musci is a hematologist who
14   examined Plaintiff for deep vein thrombosis and pulmonary embolism and he noted the
15   nature of her disability as orthopedic.  As noted by that court, it is unlikely that Dr. Musi,
16   a hematologist, would prescribe knee surgery.  Indeed, in an October 2017 exam note, Dr.
17   Musi states "patient is contemplating a bilateral knee surgery.  She is clear for the surgical
18   procedure *from our perspective.*"  (R. at 2678) (emphasis added).

19       The ALJ properly concluded, given Plaintiff's contradictory statements and
20   treatments sought, the examinations in the medical record did not support Plaintiff's claims
21   of disabling limitations, and thus properly found that her subjective symptom testimony
22   was not persuasive.  The Court must give due deference to the ALJ when it finds no error
23   in the discussion of the symptom testimony.  *See Thomas*, 278 F.3d at 954 ("[w]here the
24   evidence is susceptible to more than one rational interpretation, one of which supports the
25   ALJ's decision, the ALJ's conclusion must be upheld.").  The Court finds that the ALJ
26   provided specific, clear, and convincing reasons for discounting Plaintiff's symptom
27   testimony.
28   / / /

**B.     The ALJ did not err in evaluating the opinions of Drs. Gordon and Potter.**

Plaintiff also argues that the ALJ erred in weighing the opinions of Drs. Gordon and Potter.  (Doc. 21 at 15).  The Commissioner responds that there is substantial evidence to support the ALJ's determinations, and that these non-treating opinions were substantially based on Plaintiff's subjective accounts of pain and medical history.  (Doc. 22 at 9).  The Court agrees.

While "[t]he ALJ must consider all medical opinion evidence," there is a hierarchy among medical opinion sources.  *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008).  Generally, "more weight should be given to the opinion of a treating source than to the opinion of doctors who did not treat the claimant."  *Id.*  Treating physicians have the advantage of in-person interaction and typically a longer history of treatment than a claimant's other doctors, and their "subjective judgments . . . are important, and properly play a part in their medical evaluations."  *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988).  An ALJ "may only reject a treating or examining physician's uncontradicted medical opinion based on 'clear and convincing reasons.'"  *Carmickle v. Comm'r of Soc. Sec.*, 533 F.3d 1155, 1164 (9th Cir. 2008) (citing *Lester*, 81 F.3d at 830–31).  "Where such an opinion is contradicted, however, it may be rejected for specific and legitimate reasons that are supported by substantial evidence in the record."  *Id.*  An ALJ meets this standard by "setting out a detailed and thorough summary of the facts and conflicting medical evidence, stating his interpretation thereof, and making findings."  *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). The ALJ must also evaluate the "consistency of [an] opinion with the record as a whole."  *See* 20 C.F.R. § 404.1527(c)(4).

**1.     Dr. Gordon**

Dr. Gordon is a consultative, non-treating physician who evaluated Plaintiff on November 2, 2019, for thirty-minutes.  (R. at 2527).  Dr. Gordon noted that he had no medical records for review.  (*Id.*)  He noted that Plaintiff was "minimally cooperative" and that she declined to stand, walk, or ascend to the examination table.  (*Id.*)  She verbally

reported that she has "complete loss of bowel and bladder control," she had "radiating pain in her upper and lower extremities," her pain was "9/10" and that she is unable to complete self-care, meals, hygiene, or light housework. (*Id.* at 2528). She told him that she was prescribed a wheelchair in 2014. (*Id.* at 2527). Based on his examination, Dr. Gordon found that her wheelchair is medically necessary due to her history of lumbar, spine, knee, ankle and foot pain. (*Id.* at 2536). He then determined that she could lift and carry up to 20 pounds frequently, and up to 50 pounds occasionally; that she could stand and walk one hour at one time for a total of two hours in an eight-hour work-day. (R. at 2533).

The ALJ gave Dr. Gordon's findings partial weight because they were based solely on Plaintiff's subjective reported history. Further, he observed that she declined to provide Dr. Gordon with a full comprehensive range of motion evaluation. The ALJ provided a sufficient summary of the facts and conflicting medical evidence in making his finding. For example, the ALJ noted that in contradiction to her inability to bear weight and ambulate, Plaintiff testified that she was able to walk around her house. (R. at 2324). In direct conflict to her statement to Dr. Gordon, on November 22, 2019, she informed Dr. Viswanath that "she denies bowel or bladder control issues or gait or balance issues." (R. at 3019). The ALJ also referenced medical records that contradicted Dr. Gordon's findings, including Plaintiff's later examinations on November 22 and December 4, 2019, by treating physician Dr. Kipp. Dr. Kipp observed that Plaintiff was "able to stand on tip toes and heels" and was found to be in no acute distress, presenting with some decreased lumbar extension, but normal muscle strength and reflexes in both extremities. (R. at 3016-17). Dr. Kipp then provided her with a left knee steroid injection. (*Id.*) The ALJ also referred to prior examinations from March 2019 through January 2020 which note Plaintiff's normal x-rays, normal upper GI endoscopy, normal mood and affect, normal cardiac CTA, well-controlled hypertension, received left knee steroid injections, improved diabetes and that she denied any new complications. (R. at 2325-26). Thus, the record amply supports the weight given Dr. Gordon's opinion, and the Court finds no error occurred here.

1

2

### 2.    Dr. Potter

Plaintiff argues that the ALJ erred when he found her mental impairments were non-severe where evidence of these impairments was largely based on the same records supporting the previous ALJ's finding that Petitioner had severe mental impairments of depression and anxiety. (Doc. 21 at 16–17). Plaintiff specifically states that the weight the ALJ gave to Dr. Potter's findings of depression, anxiety, and PTSD, was thus in error. (*Id*.) The Commissioner asserts that the ALJ found little evidence to support Plaintiff's opined limitations and that he appropriately cited numerous examinations to refute her limitations. (Doc. 22 at 9–10).

Dr. Potter is a consultative psychological examiner who examined Plaintiff on November 19, 2019. (R. at 2518–25). The ALJ gave Dr. Potter's opinions partial weight.[6] (R. at 2326). Dr. Potter indicated Plaintiff had moderate limits in getting along with authority figures but that she was able to interact with family and friends. In discussing Dr. Potter's findings, Plaintiff only refers to her checked box notations of marked and moderate limitation in the "Ability to do Work-Related Activities (mental)" section. (R. at 2523-24). Plaintiff overlooks Dr. Potter's written accompanying "Summary and Conclusions" note that "due to the inconclusive timeline of symptomology, along with the unknown effects and interplay between her substance abuse, medical disorders, and psychological disorders, ***a diagnosis in unable to be substantiated*** at this time[.]" (R. at 2521) (emphasis added). Given the contradictions between the checked box and Dr. Potter's written conclusions, the Court finds no error in the partial weight assigned to Dr. Potter's findings given her ultimate inability to render a diagnosis for insufficient information.

Moreover, the weight given to Dr. Potter's opinion is supported by the ALJ's observation that "[the] medical evidence record does not contain much for mental health treatment to corroborate any limitations." (R. at 2327). He then cited other examiners' medical records through the years, including Dr. Coelho's, who found her able to respond

---

[6] Plaintiff overlooks that the ALJ also gave Dr. Coelho, who made mostly "mild" findings, "partial weight." (*Id*.)

1   appropriately to changes in the work setting.  (R. at 2321).  The ALJ also described other

2   mental health records that consistently show Plaintiff pleasant, alert, and oriented.  (R. at

3   2327).  The ALJ observed that Dr. Coelho's findings were made during the time Plaintiff

4   was maintaining regular employment at her job.  (*Id.*)  The ALJ described ample examples

5   of treatment records that discount Plaintiff's claimed severe mental health limits.

6   Accordingly, the Court finds no error here.

7   **IV.   Conclusion**

8   Having addressed the issues raised by Plaintiff under the applicable standards, and

9   conducted a review of the record and briefing, the Court affirms the decision of the ALJ

10  finding that Plaintiff is not disabled.  Plaintiff requests that if this Court does not reverse

11  the ALJ's decision, that it be remanded for a new hearing.  (Doc. 23 at 8).  However, where,

12  as here, the evidence supports the ALJ's findings that the Plaintiff is not disabled under the

13  meaning of the Social Security Act, remand is inappropriate.

14  Accordingly,

15  **IT IS HEREBY ORDERED** that the decision of the ALJ is **affirmed**.  The Clerk

16  of Court is directed to enter judgment accordingly and dismiss this action.

17  Dated this 8th day of March, 2022.

18

19

20  _____
    Honorable Diane J. Humetewa
21  United States District Judge

22

23

24

25

26

27

28